IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL L. HIGGINS,<br><br>  Plaintiff,<br><br> v.<br><br>J. MEDINA, et al.,<br><br>  Defendants. | CASE NO. 1:07-cv-00934 LJO JLT<br><br>FINDINGS AND RECOMMENDATIONS GRANTING MOTION TO DISMISS<br><br>(Doc. 30) |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with an action under 42 U.S.C. § 1983. He alleges that Defendants subjected him to excessive force, in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Defendants have filed a motion to dismiss, arguing that Plaintiff has failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a).

**I.     Exhaustion standard**

A motion to dismiss for failure to exhaust administrative remedies prior to filing suit arises under Rule 12(b) of the Federal Rules of Civil Procedure. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). In deciding a motion to dismiss for failure to exhaust non-judicial remedies, the court may look beyond the pleadings and decide disputed issues of fact. Id. at 1120. If the district court concludes that the prisoner has not exhausted non-judicial remedies, the proper remedy is dismissal of the claim without

prejudice. Id.

The exhaustion requirement is rooted in the Prison Litigation Reform Act (PLRA), which provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). California Department of Corrections and Rehabilitation (CDCR) regulations provide administrative procedures in the form of one informal and three formal levels of review to address plaintiff's claims. See Cal. Code Regs. tit. 15, §§ 3084.1-3084.7. Administrative procedures generally are exhausted once a prisoner has received a "Director's Level Decision," or third-level review, with respect to his issues or claims. Cal. Code Regs. tit. 15, § 3084.5. Defendants bear the burden of proving plaintiff's failure to exhaust. Wyatt v. Terhune, 315 F.3d at 1119.

Under CDCR regulations an inmate must file his prisoner grievance within fifteen days of the events grieved. If Plaintiff failed to exhaust the available administrative remedies, by filing a late grievance, this case must be dismissed. Woodford v. Ngo, 548 U.S. 81, 85 (2006). Furthermore, all steps of the grievance process must be completed before a civil rights action is filed, unless a plaintiff demonstrates a step is unavailable to him. Exhaustion during the pendency of the litigation will not save an action from dismissal. McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002).

**II.     Factual positions of the parties**

Defendants provide evidence that, although the incident at issue occurred on December 21, 2005, Plaintiff failed to file a grievance related to it until May 5, 2006. (Doc. 30, Ex. 1 at 2) Defendants explain that this grievance was "screened out"as untimely because it was submitted months after the 15-day grievance period had expired. Id.

For his part, Plaintiff claims that he submitted a grievance on December 28, 2005 but this complaint was lost by Defendants. Plaintiff refers to attachments to his Second Amended Complaint to address his current claims.  In particular, he refers to a grievance  dated December 28, 2005 that was attached to his Second Amended Complaint. (Doc. 16, Ex. A) Notably, the grievance bears the handwritten notation, ". . . as original 5/5/06" and bears a date/time stamp in the low, right-hand corner that reads "May 5, 2005 AM 11:57." Id.  Thus, clearly, this is a copy of the grievance received by Defendants on May 5, 2005, rather than a copy of the original grievance that Plaintiff claims to have

retained.

Plaintiff refers also to a letter from family members that purports to document the abuses he had suffered in the December 21, 2005 incident and addresses Defendants' losing his December 28, 2005 grievance. (Doc.16, Ex C-1) Plaintiff claims that this letter was mailed by his family members on February 12, 2006, the date that is reflected on its face. (Doc. 33 at 4) However, though the letter is dated February 12, 2006, it's envelope is postmarked April 8, 2006 and stamped "Received" on April 12, 2006. Likewise, though the body of this letter indicates that the family members enclosed a copy of the December 28, 2005 grievance with the letter (which Plaintiff claims to have provided to them in January 2006) no such grievance is attached to the letter. Id. at Ex C-2.

Plaintiff attached other exhibits to his Second Amended Complaint that detail the events that occurred after December 21, 2005. (Doc. 16, Ex U, Ex. Y-3) The documents reveal that he was given a hearing to determine whether he should be reclassified due to Plaintiff's alleged rules violation that occurred during the December 21, 2005 incident. Id. Plaintiff appealed the determination that he was guilty of a rules violation and the consequent housing re-assignment. (Doc. 16, Ex W) He appealed also the confiscation of his property upon entering his new housing assignment. (Doc. 16, Ex. X)

**III.   Analysis**

Defendants' evidence demonstrates that Kern Valley State Prison (KVSP) has a system for logging inmate grievances that are not "screened out" due to untimeliness. Had Plaintiff filed a grievance on December 28, 2005, related to the December 21, 2005 incident, this grievance would have been timely and a log number assigned to it. (Doc. 30, Ex. 1 at 2; Doc. 30, Ex 2)

On the other hand, Plaintiff has provided *only* a copy of the grievance that was received by the prison on May 5, 2006. He does not provide the retained copy of the original December 28, 2005 grievance, that he claims he filed with KVSP. Likewise, although he must have discussed his grievance with family members, the evidence presented by him is not credible as to *when* this occurred. The letter from the family is dated February 12, 2006 but both the postmark and the "Received" stamp belie this claim. The Court can conclude only, in the absence of any other explanation, that the incorrect date on the letter was inserted purposely in an attempt to bolster Plaintiff's ability to claim that he complied with the grievance procedures in a timely fashion.

On the other hand, the letter seems to demonstrate significant concern over Plaintiff's situation. Thus, it makes absolutely no sense that the family would find out about the situation in early January 2006 but wait until April 8, 2006, when the letter is mailed, to address these concerns with KVSP officials. The Court finds it incredible that the telephone conversation, described by Plaintiff to have occurred in early January 2005, with his family members occurred at that time. At most, the Court can conclude that this occurred sometime before April 8, 2006, and it most likely occurred within a day or two before April 8, 2006. Importantly, this letter *does not include* a copy of the claimed December 28, 2005 grievance.

Moreover, although Plaintiff was engaged in disciplinary proceedings and the related investigation into his alleged rules violation, throughout the period from December 21, 2005 through May 5, 2006 (the date by which there is no dispute that KVSP received Plaintiff's grievance), there is no notation in any of the documents attached to his Second Amended Complaint that Plaintiff ever voiced concern over the lack of response to his December 28, 2005 grievance. Given that Plaintiff claims that he was so concerned over the lack of response to his grievance that within days of making the complaint that he complained about it to his family, the fact that he did not mention these concerns to any prison officials is incredible.[1] Likewise, if prison officials were purposely acting to deprive Plaintiff of his rights to grieve, Plaintiff fails to explain why his other appeals and statements were not "lost" also.

Defendants have provided evidence that is of solid value that Plaintiff did not file a grievance within 15 days of the December 21, 2005 incident. Conversely, the Court finds that the evidence that Plaintiff submitted is not credible. Walker v. Lovelle, 2009 U.S. Dist. LEXIS 40111 (N.D. Cal. May 8, 2009) ("Plaintiff's alluding to a lost grievance, without more, is insufficient to support a finding that he properly exhausted available administrative before filing suit, as required by § 1997e(a).") Therefore, the Court recommends that the motion to dismiss be **GRANTED**.

///

---

[1] The Court notes, for example, that the IE report, dated January 11, 2006, that detailed his interview with the officer investigating Plaintiff's alleged rules violation, details also Plaintiff's numerous requests related to the contours of the investigation, but does not indicate that Plaintiff made any mention about having filed a grievance. (Doc. 16 Ex. U-5)

4


**RECOMMENDATIONS**

Accordingly, the Court HEREBY RECOMMENDS as follows:

1. The complaint be **DISMISSED**.

This Findings and Recommendation is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within 14 days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **September 27, 2010**                                          /s/ Jennifer L. Thurston
                                                                                          UNITED STATES MAGISTRATE JUDGE